USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/29/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------x

JACKSON SIKAYENA,               :
                                :
              Plaintiff,        :
                                :          07 Civ. 10573 (LAP)
         -against-              :
                                :          MEMORANDUM & ORDER
NYC TRANSIT AUTHORITY,          :
                                :
              Defendant.        :

-------------------------------x

MAILED TO plff + COUNSEL

Loretta A. Preska, Chief United States District Judge:

Pro se Plaintiff Jackson Sikayena ("Plaintiff") brings this action claiming that Defendant New York City Transit Authority ("NYCTA") terminated Plaintiff on account of his race, color, national origin, age, gender, and disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12112 et seq. ("ADA"). NYCTA now moves for summary judgment dismissing Plaintiff's claims. For the reasons set forth herein, NYCTA's motion is GRANTED.

I.  Background[1]

    A.  Plaintiff's Employment

    Plaintiff was first employed by the NYCTA in 1991 as a

Transit Property Protection Agent ("TPPA"), Department of

Security, and continued there until his termination.

(Deposition of Jackson Sikayena ("Sikayena Dep."), Ex. G at

49:5-51:17.)  A TPPA's duties, among other things, include:

maintaining surveillance of the entrances and exits of

NYCTA buildings, yards, subway stations and other

facilities and properties; making sure that all gates to

such properties are secured; registering employees,

visitors and vehicles entering NYCTA property; deterring

entry and exit of unauthorized persons, vehicles and

materials; having persons seeking entrance provide

identification ("challenging"); and reading, interpreting

---

[1] The following facts are derived from the NYCTA's Rule 56.1
Statement, which it submitted pursuant to Local Rule 56.1.
NYCTA also complied with Local Rule 56.2, which, in short,
requires a represented party to serve and file notice on a
party proceeding pro se that advises the pro se litigant
that he cannot simply rely on the allegations in his
complaint in opposing summary judgment, but that the pro se
litigant must submit some evidence raising issues of
material fact for trial.  Plaintiff's one-page "Affirmation
in Opposition"--even if read liberally--fails to satisfy
the requirements of Local Rule 56.1(b).  Accordingly, all
the averments of fact in NYCTA's Rule 56.1 Statement--
though not the conclusions the NYCTA draws therefrom--are
deemed admitted.  See Holtz v. Rockefeller & Co., Inc., 258
F.3d 62, 72 (2d Cir. 2001); Galasso v. Eisman, Zucker,
Klein & Ruttenberg, 310 F. Supp. 2d 569, 574 (S.D.N.Y.
2004).

and following special written instructions and directives. (Declaration of Patrick McGreal ("McGreal Dec."), ¶ 5.) TPPAs are monitored by Transit Property Protection Supervisors ("TPPS") whose duties include: supervising Agents in the protection of the NYCTA's facilities and property; inspecting Agents' uniforms and assigned post conditions; investigating incidents; making investigations related to property protection; and preparing reports. (Id. ¶ 6.)

### B. NYCTA Disciplinary Procedures

#### i. Process

Disciplinary charges against NYCTA employees who are represented by the Transport Workers Union, Local 100 (of which Plaintiff was a member), are processed pursuant to the disciplinary grievance procedure established in the Collective Bargaining Agreement ("CBA") between NYCTA and the TWU. (Id. ¶ 7.) Under the CBA, disciplinary disputes are subject to a multi-step grievance procedure culminating in arbitration before an impartial arbitrator. (Id. ¶ 8.)

A disciplinary action involving a TPPA commences with the preparation of charges against the TPPA including a recommended penalty. (Id. ¶ 10.) If the matter is not satisfactorily resolved, the TPPA is then scheduled to

3

appear for a Step I hearing which is held before a Step I hearing officer. (Id. ¶ 10.)[2]  The TPPA has the right to accept the recommended penalty or appeal to the next phase of the disciplinary process. (Id.)  The second step in the disciplinary grievance process is the Step II hearing, held before a Step II hearing officer who has the discretion to sustain or dismiss the charges and to sustain, dismiss, or modify the penalty based on the facts of the case. (Id. ¶ 11.)  The final step in the disciplinary grievance process is a hearing before an impartial arbitrator. (Id. ¶ 12.)  The findings of the arbitrator are final and binding on all parties.[3] (Id.)

It should be noted that a TPPA may settle the disciplinary grievance at any time during the disciplinary process. (Id. ¶ 13.)  The parties usually enter into a written Stipulation and Agreement ("Stipulation") when a disciplinary grievance is settled either at the Step II or at the arbitration hearing. (Id.)  The Stipulation memorializes the terms of the agreement, including the

---

[2] The Agent is always entitled to representation by a union representative at such hearing and may testify on his/her behalf. (McGreal Dec., ¶ 10.)

[3] While, the TPPA is usually represented by a union representative at the Step I and Step II hearings, the TPPA is generally represented by both union representative and an attorney at the arbitration. (McGreal Dec., ¶ 12.)

agreed upon penalty and the disciplinary action(s) covered by the Stipulation. (Id.)

### ii. Severity of Discipline

There are two categories of infractions under which an employee in the Department of Security (formerly the Division of Security) may be disciplined: (1) violations concerning the NYCTA's rules governing time and attendance, or 2) job performance and other violations. (Id. ¶ 14.) The Transit Authority, including its Department of Security, has a "progressive discipline" policy for violations, ranging from a warning or reprimand to suspension or dismissal. (Id. ¶ 15.)  In assessing the appropriate penalty for a violation, the nature of the violation and the employee's record are assessed. (Id.) The progression of penalties means that the penalty becomes more serious if the employee continues to have charges substantiated against him/her in the same category.  That is, the penalty imposed on each category will be based only on prior violations within the category in which the violation occurred. (Id. ¶ 16.)

On January 22, 2001, the Division of Security issued a Memorandum instructing TPPSs that any TPPA who was found sleeping or found off post without authority should be taken out of service. (Id. ¶ 18; Declaration of Carol

5

Sharpe ("Sharpe Dec."), Ex. N.)  Moreover, in light of the
September 11, 2001 terrorist attacks, John Jimerson, who
was then the Division of Security Chief, issued a
Memorandum dated September 24, 2001 to all TPPAs and TPPSs
advising them that the failure to challenge properly will
result in immediate suspension and the recommendation that
the TPPA be dismissed from service. (McGreal Dec., ¶ 17;
Sharpe Dec., Ex. M (the "September 2001 Memo").)

### C.    Plaintiff's Infractions

Plaintiff had been found sleeping while on duty three
times: in 2002, 2004, and in 2006. (McGreal Dec., ¶ 19
Sharpe Dec., Ex. P.)

#### i.    2002 Infraction and Discipline

On March 24, 2002, TPPS Frank Martelli went to the
Transit Authority train yard located at 180th Street in the
Bronx where he observed Plaintiff sleeping in Post 12B,
which is a guard booth adjacent to the gateway at the
entrance to the train yard. (McGreal Dec., ¶ 20; Sharpe
Dec., Ex. Q.)  Disciplinary charges were brought against
Plaintiff, Disciplinary Action Notification ("DAN") No. 02-
2124-0033, for sleeping while on duty, failing to
challenge, failing to place cones while gate was unsecured,
being out of uniform, and failing to update the memo
logbook.  The recommended penalty was dismissal. (McGreal

Dec., ¶ 21; Sharpe Dec., Ex. Q.)  On March 25, 2002, a Step I hearing was held and the NYCTA and Plaintiff agreed to the disciplinary penalty of a 15-day suspension, instead of dismissal, to resolve the disciplinary grievance. (McGreal Dec., ¶ 22; Sharpe Dec., Ex. Q.)

### ii.  2004 Infraction and Discipline

On July 21, 2004, at about 4:30 a.m. TPPS Castellanos went to the Transit Authority train yard located at 180th Street in the Bronx and observed that Plaintiff was in his personal car sleeping and the door to the guard booth at the 180th Street train yard was open. (McGreal Dec., ¶ 23; Sharpe Dec., Ex. R.) Disciplinary action was brought against Mr. Sikayena, DAN No. 04-2124-0090, for sleeping while on duty, leaving the booth unsecured with the gate open, and having no cones in place.  The penalty of dismissal was recommended. (McGreal Dec., ¶ 24; Sharpe Dec., Ex. R.)  On July 21, 2004, a Step I hearing was held, and on July 23, 2004, the parties entered into a written Stipulation and Agreement in which Plaintiff agreed to the disciplinary penalty of a 30-day suspension with a final warning. (McGreal Dec., ¶ 25; Sharpe Dec., Ex. S (the "2004 Stipulation").)  It was agreed in the 2004 Stipulation that "[a]ny future violation(s) of this nature (Sleeping,

7

Failure to challenge, Post Abandon) will result in dismissal." (McGreal Dec., ¶ 25; Sharpe Dec., Ex. S.)

### iii. 2006 Infraction and Discipline

On May 7, 2006, TPPS Martelli worked the 10:00 p.m. to 6:00 a.m. shift. He was assigned to supervise agents in Manhattan and the Bronx. (Declaration of Frank Martelli ("Martelli Dec."), ¶ 6; Sharpe Dec., Ex. I.) On May 8, 2006, TPPS Martelli responded to Post 12B. (Martelli Dec., ¶ 7; Sharpe Dec., Ex. I.) Plaintiff had requested that TPPS Martelli respond to the Post to receive documents that Plaintiff had to submit to management regarding his absence on an earlier day. (Sikayena Dep., 87:14-21.) TPPS Martelli arrived at Post 12B at about 2:00 a.m. by car, observed that the gate was opened, about ten feet wide, and that the traffic cones were not in place. (Martelli Dec., ¶ 8; Sharpe Dec., Ex. I.) As TPPS Martelli drove through the gateway, he observed that Plaintiff was sitting in the booth with his head tilted back. (Martelli Dec., ¶ 8; Sharpe Dec., Ex. I.) Plaintiff did not challenge TPPS Martelli as he entered. TPPS Martelli drove about twenty feet past the booth, parked the car, and walked back to the booth. (Martelli Dec., ¶ 9; Sharpe Dec., Ex. I.) From about five feet away he observed Plaintiff through the booth window sleeping from 2:00 a.m. to 2:04 a.m. (Martelli

8

Dec., ¶ 10; Sharpe Dec., Ex. I.) Plaintiff declined to write a statement about the occurrence until he had the opportunity to speak to a union representative. (Martelli Dec., ¶ 11; Sharpe Dec., Ex. I.)

Plaintiff was taken out of service, suspended, and TPPS Martelli recommended that disciplinary charges be bought against Plaintiff for failing to challenge and for sleeping while on duty. (Martelli Dec., ¶ 12; Sharpe Dec., Ex. I.) Plaintiff wrote a report regarding the incident in which he stated that he called for the supervisor to pick up a form regarding a fire next to his building. He stated that Mr. Martelli accused him of sleeping. (McGreal Dec., ¶ 27; Sharpe Dec., Ex. H.) Disciplinary action was brought against Plaintiff, DAN No. 06-2124-0047, for violating various NYCTA Rules and Regulations.[4] The penalty of dismissal was recommended. (McGreal Dec., ¶ 28; Sharpe Dec., Ex. J.)

The NYCTA recommended the penalty of dismissal. (McGreal Dec., ¶ 31; Sharpe Dec., Ex. O.) A Step I hearing was held on May 8, 2006. The charges and penalty were upheld. (McGreal Dec., ¶ 31; Sharpe Dec., Ex. O.) A Step II hearing was held on May 11, 2006, and both the charges

---

[4] A detailed summary of Plaintiff's various breaches is set forth in NYCTA's Rule 56.1 Statement, paragraphs 66-71.

and the penalty of dismissal were sustained. (McGreal Dec., ¶ 31; Sharpe Dec., Ex. O.) Plaintiff appealed the decision to arbitration, the final step in the disciplinary grievance process. (McGreal Dec., ¶ 32; Sharpe Dec., Ex. O.) Plaintiff, who was represented by an attorney and a Union representative at the arbitration hearing on August 17, 2006, had a full opportunity to adduce evidence, cross examine the Authority's witnesses and make arguments in support of his position.[5] (McGreal Dec., ¶ 32; Sharpe Dec., Ex. T.) The Arbitrator, Stephen F. O'Beirne, found that the NYCTA had just cause to discharge Plaintiff. (McGreal Dec., ¶ 32; Sharpe Dec., Ex. T.) The Arbitrator specifically referred to the Stipulation and Agreement dated July 23, 2004 in which the parties agreed that any future violation for sleeping while on duty would result in dismissal. (McGreal Dec., ¶ 33; Sharpe Dec., Exs. S, T.) Plaintiff was terminated effective August 21, 2006 pursuant to the Arbitrator's decision. (McGreal Dec., ¶ 34.)

D.   EEOC Determination

Plaintiff filed a complaint with the EEOC on June 14, 2007. (Sharpe Dec., Ex. C.) He alleged in the EEOC

---

[5] The records do not reflect that Plaintiff raised a defense regarding his alleged disability at any time during the disciplinary process. (McGreal Dec., ¶ 34; Sharpe Dec., Ex. T.)

10

complaint that non-Black employees were not terminated when disciplined for the same issue and that he was discriminated against and retaliated against because of his race, color, national origin, age, and gender all in violation of Title VII of the Civil Rights Act of 1964. (Id.) By letter dated August 7, 2007, the EEOC issued its Dismissal and Notice of Rights and advised Plaintiff that an arbitrator upheld the NYCTA's right to terminate him and that the agency did not have the authority to overrule the arbitrator's decision. (Sharpe Dec., Ex. D.)

### E. Plaintiff's Comparators

During discovery in this lawsuit, Plaintiff sought the employment records and DAN history of several employees within the Department of Security whom he deemed his comparators. (Sharpe Dec., ¶ 33.) Four of the employees named by Plaintiff have had incidents of sleeping while on duty. (McGreal Dec., ¶ 37.) Plaintiff was treated the same as all Agents and Supervisors in the Department of Security who had two or more prior incidents of sleeping while on duty and had received a 30-day suspension. (Id. ¶ 52.) The NYCTA's recommended penalty of dismissal of such employees was sustained at the Step I and Step II hearings. The independent arbitrator, the same arbitrator who heard all three arbitrations and whose decisions are binding pursuant

to the CBA, imposed the penalty of suspension for two of the employees and the penalty of dismissal for Plaintiff.[6] (Id. ¶ 52.)  Moreover, Plaintiff testified at his deposition on October 15, 2008 that he was not discriminated against on account of his age, race, color, or gender. (Sikayena Dep. at 44:3-48:6.)

     F.   Plaintiff's Retaliation and ADA Claims[7]

Plaintiff claims that the NYCTA retaliated against him because he spoke to managers outside of his department, the Department of Security.  Specifically, Plaintiff testified that the "write-ups" in 2002, 2004, 2006 and his ultimate termination were specific acts of retaliation. (Id. at 97:2-99:15.)

Plaintiff further claims that he was terminated on account of the fact that he suffered side effects from his blood pressure medication. (Id. at 106:3-21.)  However, he testified that the medication did not cause him to become

---

[6] The fourth employee was caught sleeping before the September 2001 Memo was disseminated and received a formal reprimand. (McGreal Dec., ¶ 38.)

[7] Although Plaintiff does not cite the ADA in his complaint, he is proceeding pro se, and the Court must liberally construe his pleadings "to raise the strongest arguments that they suggest." See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  However, a pro se plaintiff's speculative or conclusory claims will not suffice. See Hudson v. Greiner, No. 99 Civ. 12339, 2000 WL 1838324, *2 (S.D.N.Y. Dec. 13, 2000).

sleepy at work, only drowsy. (Id. at 115:6-20.)   When

Plaintiff was found sleeping on May 8, 2006, he did not ask

his supervisor for medical treatment. (Id. at 141:3-21.)

Moreover, Plaintiff, who was represented by counsel, never

mentioned his medical condition during the arbitration.

(Id. at 144:19-45:15.)   Plaintiff's medication never

stopped him from doing all the major activities of his life

nor did it cause him to take any significant time off from

work. (Sikayena Dep., 126:11-29:23; 159:11-161:2.)

II.   JURISDICTION

      This Court has jurisdiction over claims under Title

VII pursuant to 28 U.S.C. § 1331.[8]

III. DISCUSSION

      A.   Summary Judgment Standard

      As this is a motion for summary judgment, the NYCTA

will prevail only "'if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue

as to any material fact and that [the NYCTA is] entitled to

---

[8] Because Plaintiff received a "Notice of Rights" letter
from the EEOC (see Sharpe Dec., Ex. D), Plaintiff is not
jurisdictionally barred from bringing his Title VII claims.
See 42 U.S.C. §§ 2000e-5(1) and (f)(1); Sheehan v.
Purolator Courier Corp., 676 F.2d 877, 887 (2d Cir. 1981)
("[I]t is undisputed that a right to sue letter is a
jurisdictional prerequisite to a suit seeking adjudication
of the merits of a Title VII claim.").

judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" Overton v. New York State Div. of Military and Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In assessing whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to the non-moving party. Lucente v. IBM Corp., 310 F.3d 243, 253 (2d Cir. 2002).

When a non-moving party fails to respond to a motion for summary judgment,[9] "the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004). "'If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.'" D.H. Blair &

---

[9] Here, Plaintiff filed an "Affirmation in Opposition"; however, Plaintiff failed to set forth any facts or arguments to support the allegations in his Complaint.

Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006)

(quoting Vermont Teddy Bear Co., 373 F.3d at 244)).

B.     Plaintiff's Title VII and ADEA Claims

Title VII makes it unlawful for an employer to discriminate against any individual because of "such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2000). To evaluate Title VII claims, courts apply the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). A plaintiff has the initial burden of making out a prima facie case of discrimination. Collins v. N.Y. City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002).[10] This requires the Plaintiff to show that: "(1) [he] is a member of a protected class; (2) [he] applied and was qualified for a job for which the employer was seeking applicants; (3) [he] suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination." Williams v. R.H. Donnelley Corp., 368 F.3d 123, 126 (2d Cir. 2004) (citing McDonnell Douglas Corp., 411 U.S. at

_____

[10] Both Title VII and the ADEA set forth parallel requirements for a plaintiff to establish a prima face case of discrimination. See Nieves v. Angelo, Gordon, & Co., No. 07-cv-2330, 2009 WL 1910970, at *2 (2d. Cir. July 6, 2009) (recognizing generally that "[t]he same standards and burdens apply to claims under both Title VII and the ADEA.").

802)). The Court of Appeals has characterized a plaintiff's burden as "de minimis"—-that is, it is "neither onerous, nor intended to be rigid, mechanized or ritualistic." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001) (internal quotation marks and citations omitted). If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to his employer to provide a legitimate, nondiscriminatory reason for the alleged adverse employment action. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). If the employer carries its burden, the presumption of discrimination "drops out of the picture," and the burden shifts back to plaintiff "'to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 513 (1993) (quoting Burdine, 450 U.S. at 253).

Here, Plaintiff has failed to meet his burden of proving a prima facie case of employment discrimination under Title VII because the circumstances surrounding his termination do not permit an inference of discrimination. Moreover, even if Plaintiff had met his burden, the NYCTA has offered a legitimate, nondiscriminatory reason for the

16

alleged adverse employment action--specifically,
Plaintiff's falling asleep while on duty which violated the
September 2001 Memo and breached the terms of the 2004
Stipulation.  As such, no genuine issue exists as to any
material fact, and the NYCTA is entitled to judgment as a
matter of law.

Plaintiff has failed to present any evidence
illustrating that he was terminated under circumstances
permitting an inference of discrimination.  Plaintiff's
only evidence of discrimination lies in the fact that other
employees, who were also disciplined for sleeping while on
duty, were not terminated.  However, the NYCTA's
oppositions points out that in several of those cases, the
NYCTA recommended dismissal but later entered into
stipulations with the offending employees whereby the
employees agreed to suspensions (as was the case after
Plaintiff's first two infractions).  Moreover, in two other
instances, the NYCTA recommended dismissal for the
offending employees, as it did with Plaintiff.  Those
recommendations were approved at both the Step I and Step
II hearings but were later reduced to suspensions as to the
other employees upon review by a neutral arbitrator
(coincidentally, the same arbitrator who reviewed
Plaintiff's claim).  The fact that Plaintiff's termination

17

"occurred [] only after a decision, based on substantial evidence, of an undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent the termination . . . . is highly probative of the absence of discriminatory intent in that termination." Collins v. New York City Transit Authority, 305 F.3d 113, 119 (2d Cir. 2002). Also, three of the purported comparators were older than Plaintiff, two were Hispanic, and one was Black. (See McGreal Dec., ¶ 53.) In any event, Plaintiff has offered no evidence from which a fact-finder could infer that Defendant's reasons for terminating Plaintiff were pretextual.

Accordingly, Defendant's motion for summary judgment dismissing Plaintiff's claims that he was discriminated against on account of his race, color, national origin, age, and gender is GRANTED.

C. Plaintiff's Retaliation Claim

Title VII also provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). The "'objective of this section is obviously to forbid an employer from retaliating against an employee

18

because of the latter's opposition to an unlawful employment practice.'" Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 291-92 (2d Cir. 1998) (quoting Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988)). To prevail on a claim of retaliation in violation of Title VII, the plaintiff must show that he "engaged in protected participation or opposition under Title VII, that the employer was aware of this activity, that the employer took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." Sumner v. United States Postal Service, 899 F.2d 203, 208-09 (2d Cir. 1990).

Here, Plaintiff's so-called protected activity was that he had "spoken to the bosses outside [of the Security] Department." (Sikayena Dep. at 98:7-8.)[11] Even assuming Plaintiff put forth evidence showing that these communications were a protected activity and that the NYCTA was aware of this activity, Plaintiff has failed to show any causal connection between the communications and his termination. See Gangadeen v. City of New York, No. 07 Civ.

---

[11] The alleged conversations with his superiors took place after Plaintiff's 2004 incident. Plaintiff was subsequently terminated in May 2006.

10965, 2009 WL 2461001, *15 (S.D.N.Y. Aug. 12, 2009)

("While the Second Circuit has not established a bright-
line rule, two years is simply too attenuated to supply the
required causal connection."). Accordingly, because
Plaintiff has failed to make a prima facie showing of
retaliation, Defendant's motion is GRANTED.

       D.    Plaintiff's ADA Claim

       The ADA sets forth that the "powers, remedies, and
procedures set forth in [Title VII] shall be the powers,
remedies, and procedures this subchapter provides . . . to
any person alleging discrimination on the basis of
disability . . . ." 42 U.S.C. § 12117(a).  In New York, the
statute of limitations for filing a charge of
discrimination with the EEOC is 300 days running from the
date of the discriminatory act (here, Plaintiff's
termination). See 42 U.S.C. § 2000e-5(e).  "When a
plaintiff fails to file a timely charge with the EEOC, the
claim is time-barred." Butts v. City of New York Dept. of
Housing Pres. and Dev., 990 F.2d 1397, 1401 (2d Cir. 1993).

       Plaintiff made no allegations of age discrimination in
his EEOC Complaint. (See Sharpe Dec., Ex. C)  Accordingly,
even assuming Plaintiff's termination date is determined to
be September 16, 2006 (the date of the arbitration opinion
affirming Plaintiff's dismissal), Plaintiff's age

discrimination claim falls well outside the 300 day limit
and is therefore barred.

## Conclusion

For the foregoing reasons, Defendant's motion for
summary judgment [dkt. no. 32] is GRANTED and Plaintiff's
complaint is dismissed in its entirety.  The Clerk of Court
shall mark this action CLOSED and all pending motions
DENIED as moot.


SO ORDERED:

DATED:    New York, New York
          September 29, 2009

LORETTA A. PRESKA, Chief U.S.D.J.